**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| DANNY ISQUIERDO,<br><br>    Plaintiff,<br><br>    v.<br><br>W.G. HALL, LLC,<br><br>    Defendant. | Case No. 15-cv-00335-BLF<br><br>**ORDER GRANTING (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT; (2) PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**<br><br>[Re: ECF 33, 34] |

Plaintiff Danny Isquierdo ("Isquierdo") sued his former employer, Defendant W.G. Hall, LLC doing business as @Work Personnel Services Inc. ("W.G. Hall") on a class wide basis for violations of various wage and hour laws in California. Two motions have been filed in this putative class action. First, Isquierdo moves for an order granting final approval of the settlement agreement. *See* Motion for Final Approval of the Class Action Settlement, ECF 34-1, (hereinafter, "Final Approval Mot."). Second, Isquierdo moves for an award of attorneys' fees, costs and an incentive award. Motion for Att'y Fees and Costs, ECF 33 (hereinafter, "Mot. for Att'y Fees").

The Court held a final fairness hearing on August 24, 2017. For the reasons set forth below and on the record at the final fairness hearing, the Court GRANTS Isquierdo's motion for final approval and the motion for attorneys' fees, costs, and incentive award.

## I. BACKGROUND

### A. The Parties and Claims

Isquierdo was employed by W.G. Hall from approximately April 2014 through May 2014, working as a forklift driver for a number of W.G. Hall's clients in Monterey County. Isquierdo claims that W.G. Hall had a policy and practice of failing to compensate its employees for mandatory work that the employees performed, which violated several labor laws in California. *See generally* Second Amended Complaint ("SAC"), ECF 16 (filed July 27, 2015). For example, Isquierdo alleges that W.G. Hall had a mandatory requirement that Isquierdo and the class members complete pre-assignment tasks without payment of wages. *Id*. ¶¶ 57-66. Moreover, Isquierdo alleges that the class was not given reporting time pay for occasions when those tasks constituted less than half of their scheduled or usual day's work, or for occasions when such tasks required them to report for work just to be sent home. *Id*. ¶¶ 52-56. Because the time involved in these uncompensated tasks was not reflected in their wage statements, Isquierdo and the putative class members allege that they received inaccurate, incomplete and late wage statements. *Id*. ¶¶ 67-85. Isquierdo further contends that the wage statements contained other administrative defects that were not corrected until after litigation commenced. In addition, Isquierdo alleges that W.G. Hall regularly and consistently failed to reimburse him and the class members for work related expenses. *Id*. ¶¶ 92-96.

The Second Amended Complaint asserts eight causes of action including several violations of wage and hour laws under the California Labor Code, violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200), and a cause of action under the California Labor Code Private Attorneys General Act of 2004 (Cal. Labor Code § 2698) ("PAGA"). *See generally* SAC.

### B. Terms of the Settlement Agreement

After nearly two years of litigation, the parties settled the case with the aid of an experienced mediator in the wage and hour class action field, Michael J. Loeb, Esq. The written Settlement Agreement contemplates the certification of an opt-out settlement class pursuant to Federal Rule of Civil Procedure 23, defined as: "All persons employed by W.G. Hall, LLC doing

business as @Work Personnel Services, Inc. at a place of business in California and classified by W.G. Hall, LLC doing business as @Work Personnel Services, Inc. as an hourly or non-exempt employee at any time from July 3, 2010 through December 31, 2015." Settlement Agreement ¶ 1.6, ECF 25-2, Ex. 1. Notice was successfully delivered to 9,161 Settlement Class Members, and only eight (8) chose to opt-out. The Settlement Agreement provides that W.G. Hall will pay the total amount of $445,000 ("Settlement Payment") to settle all claims asserted against them in this action. *Id.* ¶ 6.1. The Net Settlement Amount is estimated to be $264,226 after consideration of attorneys' fees and costs, settlement administrator's fees, incentive awards to Isquierdo as the class representative, and the civil penalties under PAGA. *Id*. ¶ 6.3. The net settlement funds will then be divided proportionately among the class members who do not opt-out, with each class member receiving a pro-rata payment based on the number of hours that class member worked during the Class Period.

On February 28, 2017, the Court issued an order which: granted preliminary approval of the class action settlement; preliminarily certified the class; appointed Isquierdo as class representative; appointed Isquierdo's counsel as Class Counsel; approved forms and methods of notice to the class; set a deadline for objections forty-five (45) calendar days after the date on which the Settlement Administrator mailed the class notice; and set a hearing date for Isquierdo's motion for final approval of the class action settlement and for the motion for attorneys' fees. *See* Order Preliminarily Approving Settlement, ECF 31. No objections were received in response to the class notice, and no objectors appeared at the final fairness hearing.

On August 24, 2017, the Court heard Isquierdo's motion for final approval and motion for attorneys' fees and costs. The Court thereafter granted both the motion for final approval of class action settlement and the motion for attorneys' fees on the record, and it advised the parties that an order setting forth the Court's reasoning would be forthcoming. The Court's reasoning is set forth below.

## II. MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

In line with its previous order granting preliminary approval, the Court now concludes that the proposed settlement satisfies the requirements of Federal Rule of Civil Procedure 23(e) and is fair, adequate, and reasonable.

### A. Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026. In order to assess a settlement proposal, the district court must balance a number of factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026)).

Settlements that occur before formal class certification also require a higher standard of fairness. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, the court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

### B. Rule 23(a) and (b) Requirements

A class action is maintainable only if it meets the four Rule 23(a) prerequisites:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4

> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In a settlement-only certification context, the "specifications of the Rule . . . designed to protect absentees by blocking unwarranted or overbroad class definitions . . . demand undiluted, even heightened, attention[.]" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

In addition to the Rule 23(a) prerequisites, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc.*, 521 U.S. at 614. Rule 23(b)(3), relevant here, requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The "pertinent" matters to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.*

The Court previously found the settlement class satisfied the requirements for numerosity, commonality, typicality, and adequacy of representation under Rule 23(a). *See* Preliminary Approval Order. The Court is unaware of any changes since the preliminary approval that would alter its analysis. *See G.F. v. Contra Costa Cty.*, No. 16-3667, 2015 WL 4606078, at *11 (N.D. Cal. July 30, 2015). Nevertheless, the Court summarizes its basis for determining that the requirements of Federal Rule of Civil Procedure 23 have been satisfied. First, the Settlement Class comprises of 9,153 employees potentially impacted by the allegations raised in this case, and the individual joinder of that many persons would be impracticable. Second, class members

share common questions of law and fact pertaining to, for example, whether W.G. Hall consistently underpaid class members and misreported their wage statements during the relevant class period. Third, the claims of Isquierdo as the class representative are typical of the class, arising from W.G. Hall's alleged pattern and practices regarding its payment policies and wage reporting. The representation is also adequate because there are no known conflicts of interest with proposed class members and Class Counsel is experienced in wage and hour class action lawsuits such as this. Lastly, questions of law and fact common to class members predominate over questions affecting only individuals, and certification of a Rule 23(b)(3) opt-out settlement class action for purposes of settlement is superior to other available means of adjudicating this dispute.

### C. Adequacy of Notice

The Court previously approved the parties' plan for providing notice to the class when it granted preliminary approval of the class action settlement. *See* Preliminary Approval Order, ECF 31. In the motion for final approval, the parties state that they have carried out this notice plan. Final Approval Mot. 6. Prior to the preliminary approval hearing, the Court examined carefully the proposed class notice. At the preliminary approval hearing on January 19, 2017, the Court requested that the parties submit a joint update regarding whether the settlement administrator's fees could be reduced and what the total value of the settlement credit from the related *Zemudio* settlement would be. The Court further requested that the parties make certain changes to the notice in order to clarify the procedures for objecting to the settlement and attending the final approval hearing, as well to clarify the payment schedule. The parties submitted a joint status update and a revised class notice addressing the Court's comments at the preliminary approval hearing. *See* Status Report Re Preliminary Approval, ECF 29; Proposed Order Re Modification to Conditional Approval Following the Parties' Joint Status Update, ECF 30.

Isquierdo submits a declaration from the Settlement Administrator, Kelly Kratz, stating that the notice was delivered to all class members by United States mail on April 13, 2017. Kratz Decl. ¶ 7, ECF 34-3. After tracing and re-mailing notices that were returned as undeliverable, a total of 8,655 (94.47%) of the 9,161 notices were successfully delivered. *Id*. ¶¶ 8-10. The Court is

satisfied that the class members were provided with adequate notice. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (holding that notice must "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"); *Lundell v. Dell, Inc.*, No. C05-3970, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006) (holding that notice sent via email and first class mail constituted the "best practicable notice" and satisfied due process requirements).

### D. Fairness, Adequacy and Reasonableness

In light of the legal standard articulated above, the Court is guided by the *Hanlon* factors in evaluating whether the proposed settlement as a whole satisfies Rule 23(e). 150 F.3d at 1026. The Court has considered the *Hanlon* factors that are relevant to the circumstances of this case and concludes that the proposed settlement is fundamentally fair, adequate, and reasonable. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) ("A district court may consider some or all of the [*Hanlon*] factors when assessing whether a class action settlement agreement meets this standard [under Rule 23(e)(2)].") (internal citation and quotation marks omitted). As further discussed below, the Court also finds that there is no indication of collusion among the negotiating parties because the proposed settlement is the result of post-discovery, arms-length negotiations between experienced counsel with the assistance of an experienced mediator in the wage and hour class action field. "A presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.'" *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) (quoting *Manuel for Complex Litigation* (Third) § 30.42 (1995)).

The Court concludes that the proposed settlement takes into account the risks that Isquierdo faced in attempting to prevail on behalf of the class. Settlement at this point in the litigation is also appropriate given the extent of discovery already completed by the parties as well as the likelihood of expensive and risky continued litigation. In addition, the gross settlement amount of $445,000 results in an average of approximately $28.88 per class member after deductions. The Settlement Agreement also provides that the settlement funds will be distributed to the class based on a pro-rata formula in proportion to the number of hours each class member

7

worked during the Class Period. Given these circumstances, the Court concludes that this recovery is fair and adequate. The class members apparently share the Court's position, as there were no objections to the proposed settlement and a very small number of class members chose to opt-out.

### i. Strength of Isquierdo's Case and the Risk of Continuing Litigation

Approval of a class settlement is appropriate when "there are significant barriers plaintiffs must overcome in making their case." *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Similarly, difficulties and risks in litigating weigh in favor of approving a class settlement. *See Rodriguez*, 563 F.3d at 966.

The Court finds that absent settlement, it is likely that litigation would have continued for a significant period of time and would have resulted in the substantial expenditure of resources by both parties, particularly at the class certification stage. The parties estimate that continued litigation could take years and would necessitate costs associated with expert discovery, class certification, summary judgment, as well as trial preparation. Isquierdo recognizes that the potential outcome could be of no greater value to the class members than the proposed settlement, and could also potentially result in a recovery that is significantly less than the agreement reached between the parties.

Although Isquierdo maintains his belief that he would prevail on the underlying merits of the action, he acknowledges that several hurdles stood in his way. Final Approval Mot. 12. For example, W.G. Hall had a number of viable defenses to Isquierdo's claim for unpaid wages, including a *de minimis* defense that would have risked dismissal of some or all of Isquierdo's claims. Counsel for Isquierdo also recognized that it would be difficult to prove that W.G. Hall "willfully" failed to pay wages or to provide complete and accurate wage statements to the class members. As is the case for all plaintiffs seeking to represent a class of similarly situated individuals, Isquierdo also considered the possibility that the putative class would not be certified. *Id*. 13.

For these reasons, the Court finds that the risks associated with Isquierdo's case and the likelihood of continued litigation weigh in favor of approving the settlement.

### ii. The Amount Offered in Settlement

"In assessing the consideration obtained by the class members in a class action settlement, 'it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). "In this regard, it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

The Settlement Agreement provides for a gross amount of $445,000 before deductions of various costs associated with settlement. Settlement Agreement ¶ 6.1. After these deductions, the net settlement amount is approximately $264,226. *Id.* ¶ 6.3. The net amount would then be distributed based on a compensation formula tied to the length of employment that ensures that class members who worked throughout the Class Period receive the highest compensation. Thus, while the average amount per class member is approximately $28.88, class members who worked a large number of hours will receive a favorable pro-rata share of the settlement amount. For example, the class member working the most number of hours during the Class Period will be entitled to an estimated amount of $730.24 under the settlement terms. Final Approval Mot. 9.

Isquierdo acknowledges that the settlement amount does not compensate class members for 100% of the alleged time at issue. However, after discovery and throughout mediation, Isquierdo accepted that "a 100% violation rate is not realistic and recovery would likely be significantly reduced at trial." *Id.* 10. The SAC contains allegations of a wide variety of wage and hour violations, and it is likely that most employees did not suffer the maximum amount of violations. Thus, discounting the claims in order to reach a settlement was reasonable. The fact that there are no objections to the settlement further supports the reasonableness of the settlement amount.

Under these circumstances, this factor weighs in favor of approval.

### iii. Extent of Discovery

The Court also considers the fact that the parties have engaged in a significant amount of formal and informal discovery during the nearly three years that this case has been pending. The parties propounded multiple sets of discovery requests and responses, and exchanged documents including extensive company data regarding W.G. Hall's time and pay records. After conducting this discovery as well as participating in the mediation process, Class Counsel was able to evaluate this case and to make an informed decision that settlement was the best way forward. The proposed settlement is thus not a "product of uneducated guesswork." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (finding the parties were sufficiently informed prior to settlement because they engaged in discovery, took depositions, briefed motions, and participated in mediation).

For these reasons, this factor also weighs in favor of approval.

### iv. The Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each parties' expected outcome in litigation."). Here, Class Counsel declares that the proposed settlement balances the realistic monetary relief available to the class against the magnitude of the risks of continued litigation and thus is fair, adequate, and reasonable. Declaration of B. James Fitzpatrick ("Fitzpatrick Decl."), ECF 34-2, ¶¶ 3, 6. The Court credits the recommendation of Class Counsel, who have more than 30 years of wage and hour and class action experience combined, and have served as counsel in an impressive number of similar class actions. *Id*. ¶¶ 7-9.

In light of the experience of counsel and their belief that the settlement is in the best interest of the class members, this factor weighs in favor of approval.

### v. The Reaction of the Class to the Proposed Settlement

After over 9,000 class members received notice, there were no objections to the proposed

settlement or to Class Counsel's motion for fees, and only eight chose to opt-out. The opt-out rate in this case was a fraction of 1%, which means that 99.91% of the class (9,153 class members) will receive their pro-rata settlement award. This extremely positive reaction from the class to the proposed settlement strongly favors final approval. Courts have approved settlements with much higher opt-out rates. *See, e.g.*, *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (granting final approval of settlement where 16 out of 329 class members (4.86%) requested exclusion). The lack of objectors to the settlement also supports approval. *See Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) ("A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it.").

### E. The *Bluetooth* Factors

In addition to the factors considered above, the Court must also take into account that this settlement occurred before formal class certification. Thus, the settlement must meet a higher standard of fairness. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458. The Court must examine the settlement with "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth*, 654 F.3d at 946. "Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. Signs of subtle collusion include:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
>
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

11

*Id.* (internal quotations marks and citations omitted).

The Settlement Agreement in this case does not include any of these warning signs and contains no indication of a collusive deal. The first factor is not present, as all class members are entitled to monetary relief based on the number of hours worked during the Class Period. There is also no "clear sailing" provision because the attorneys' fees, discussed below, represent a reasonable percentage of the common settlement fund and are also comparable to the lodestar. The $5,000 service award to Isquierdo is also not indicative of a collusive deal because this amount is "presumptively reasonable" in the Ninth Circuit. *See, e.g.*, *Smith v. Am. Greetings Corp.*, No. 14-2577, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016). In regards to the third factor, the proposed settlement is also non-reversionary.

Importantly, the parties reached the proposed settlement after an extensive arm's-length, non-collusive mediation with the assistance of an experienced mediator in the wage and hour class action field, Michael J. Loeb, Esq. Final Approval Mot. 15. *See G. F. v. Contra Costa Cty.*, No. 13-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (noting that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"). Accordingly, the Court concludes that none of the *Bluetooth* factors are present and the proposed settlement does not raise an inference of collusion.

### F. Conclusion

For the foregoing reasons, and after considering the circumstances as a whole as guided by the *Hanlon* and *Bluetooth* factors, the Court finds that notice of the proposed settlement was adequate, the settlement is fair, adequate and reasonable, and the settlement was not the result of collusion. As such, Isquierdo's Motion for Final Approval of Class Action Settlement is hereby GRANTED.

## III. MOTION FOR ATTORNEYS' FEES AND COSTS

### A. Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have

already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* at 942.

Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class. *Bluetooth*, 654 at 942. Courts applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure." *Id.* (internal quotation marks omitted). However, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.3d 1301, 1311 (9th Cir. 2011). Relevant factors to a determination of the percentage ultimately awarded include: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Tarlecki v. bebe Stores, Inc.*, No. C 05–1777 MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009).

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942.

In common fund cases, a lodestar calculation may provide a cross-check on the reasonableness of a percentage award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Where the attorneys' investment in the case "is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Id.* "Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when

13

litigation has been protracted." *Id.* Thus even when the primary basis of the fee award is the percentage method, "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.* "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting. . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Covillo v. Specialtys Cafe*, No. C-11-00594-DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (internal quotation marks and citation omitted).

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).

**B. Discussion**

Class Counsel seek an award of attorneys' fees based on the common fund method. Class Counsel request $111,250 in attorneys' fees, which represents 25% of the gross settlement amount. *See* Mot. for Att'y Fees 1. The billing rate for Class Counsel in this matter is $450 per hour, which is reasonable in the Northern District of California. Declaration of B. James Fitzpatrick in Support of Plaintiff's Motion for Attorneys' Fees and Costs, ("Fitzpatrick Att'y Fees Decl.") ECF 33-1 ¶ 10. Class Counsel further demonstrate that they have dedicated 260 hours and other firm resources toward litigating this case, and that they took on substantial risk by taking the case on a contingency fee basis for several years without any guarantee of recovery. *Id.* ¶ 12.

The Court has reviewed Class Counsel's motion for attorneys' fees and supporting declaration and concludes that an award of $111,250 in attorneys' fees to Class Counsel is reasonable. This amount represents 25% of the common fund, which is the "benchmark" in the Ninth Circuit. *Bluetooth*, 654 at 942. The declaration submitted by Class Counsel also makes clear that the requested amount actually reflects a slight reduction in Class Counsel's lodestar amount. Fitzpatrick Att'y Fees Decl. ¶ 12; Mot. for Att'y Fees 2, 4-5. Given the positive outcome of the settlement for the class members, as well as the lodestar cross-check, the Court finds that the requested fee award is reasonable. Accordingly, Class Counsel's motion for $111,250 in attorneys' fees is GRANTED.

Class Counsel also seek reimbursement of $6,846.27 in out-of-pocket expenses advanced and incurred during the litigation. Mot. for Att'y Fees 6-7; Fitzpatrick Att'y Fees Decl. ¶ 17. Class Counsel incurred these costs for filing fees, courier/service of process fees, accountant professional services, and mediation. Mot. for Att'y Fees 7. These litigation costs over a two-year period are reasonable and Class Counsel's motion for $6,846.27 in costs is GRANTED.

## IV. SERVICE AWARD

### A. Legal Standard

Service awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (internal citation omitted). Courts evaluate incentive or service awards individually, "using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977 (citation and internal quotations and alterations omitted). Indeed, "courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

### B. Discussion

Isquierdo requests a service award—also known as an enhancement payment or incentive award—of $5,000. Mot. for Att'y Fees 6-7. Again, $5,000 is the Ninth Circuit's "benchmark" to compensate class representatives for their work on behalf of a class. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015); *Harris v. Vector Marketing Corp.*, No. C-08-5198, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting cases holding that an award of $5,000 has been found to be presumptively reasonable in this Circuit). Although Isquierdo originally requested a higher amount, he ultimately adjusted his request downward to the $5,000 benchmark in light of the discussion at the hearing on the motion for preliminary approval of the settlement. *See* ECF 29, 4. Isquierdo estimates that he spent over fifteen hours performing work

on behalf of the class, and Class Counsel represents that Isquierdo went "above and beyond" the ordinary responsibilities of a class representative by providing Class Counsel with information and documents, attending numerous meetings, preparing for mediation, and reviewing documents including his own declaration in this matter. Mot. for Att'y Fees 6-7.

The Court also notes that the service award makes up only one percent of the gross settlement amount, which is a "tiny fraction of the common fund," justifying the amount to be awarded. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995); Mot. for Att'y Fees 12-13. The request for a $5,000 service award to Isquierdo is hereby GRANTED.

## V. ORDER

For the foregoing reasons, and for the reasons set forth on the record at the final approval hearing, the Court hereby ORDERS as follows:

1. The class is certified for settlement purposes only.

2. Final Approval of the Class Action Settlement is GRANTED. The Court finds that the proposed settlement is fair, adequate, and reasonable.

3. Class Counsel's request for an award of attorneys' fees in the amount of $111,250 to be paid from the Settlement Fund is reasonable. The motion for an award of $111,250 in attorneys' fees is hereby GRANTED.

4. Class Counsel's request for a reimbursement of litigation costs in the amount of $6,846.27 to be paid from the Settlement Fund is reasonable. The motion for an award of $6,846.27 in costs is hereby GRANTED.

5. Class Counsel's request for an enhancement payment of $5,000 for Plaintiff Danny Isquierdo is warranted and reasonable. The request for an enhancement payment of $5,000 is GRANTED.

Dated: October 3, 2017

_____
BETH LABSON FREEMAN
United States District Judge

16